UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK\
_____

ABDUL ALI KARIM-RASHID,
 also known as Anthony Salgado,

                              Plaintiff,

            v.

NEW YORK STATE DEPARTMENT OF CORRECTIONS
 AND COMMUNITY SUPERVISION,
ANTHONY J. ANNUCCI, Acting Commissioner
 of The New York State Department of Corrections
 and Community Supervision,
KEVIN BRUEN, Deputy Commissioner and Counsel
 for the New York State Department of Corrections
 and Community Supervision, and
STEWART ECKERT, Superintendent of Wende
 Correctional Facility,

                             Defendants.
_____

REPORT
and
RECOMMENDATION

16-CV-00340A(F)

APPEARANCES:        DECHERT LLP
                          Attorneys for Plaintiff
                          EVAN BERTHOLDO McGINTY, and
                          MAURICIO A. ESPANA, of Counsel
                          1095 Avenue of the Americas
                          New York, New York  10036
                                and
                          STEPHEN D. BROWN, of Counsel
                          Cira Centre
                          2929 Arch Street
                          Philadelphia, Pennsylvania  19104-2808

                          THE LEGAL AID SOCIETY
                          Attorneys for Plaintiff
                          MARY LYNNE WERLWAS, of Counsel
                          199 Water Street
                          New York, New York  10038

ERIC T. SCHNEIDERMAN
ATTORNEY GENERAL, STATE OF NEW YORK
Attorney for Defendants
KATHLEEN M. KACZOR
Assistant Attorney General, of Counsel
Main Place Tower
Suite 300A
350 Main Street
Buffalo, New York  14202

## JURISDICTION

This case was referred to the undersigned on July 14, 2016, by Honorable Richard J. Arcara for all pretrial matters including preparation of a report and recommendation on dispositive motions.  The matter is presently before the court on Defendants' motion to dismiss for lack of jurisdiction filed August 18, 2016 (Dkt. 12).

## BACKGROUND

On April 29, 2016, Plaintiff Abdul Ali Karim-Rashid ("Plaintiff"), commenced this action alleging Defendants New York State Department of Correctional Services and Community Supervision ("DOCCS"), and various DOCCS employees including Acting DOCCS Commissioner Anthony J. Annucci ("Annucci"), DOCCS Deputy Commissioner and Counsel Kevin Bruen ("Bruen"), and Wende Correctional Facility Superintendent Stewart Eckert ("Eckert"), violated Plaintiff's rights pursuant to the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc *et seq.*, by confiscating and withholding religious items from Plaintiff, prohibiting Plaintiff from obtaining and using prayer oils, and prohibiting Plaintiff from shaving his body hair in observation of his Muslim faith.  Plaintiff asserts four claims for relief under the RLUIPA seeking declaratory and injunctive relief.  Defendants' answer was filed July 13, 2016.

On August 18, 2016, Defendants filed a motion seeking to dismiss the Complaint for lack of subject matter jurisdiction (Dkt. 12) ("Defendants' Motion"), attaching Defendants' Memorandum of Law in Support of Motion to Dismiss for Lack of Subject Matter Jurisdiction (Dkt. 12-1) ("Defendants' Memorandum"). Also filed on August 18, 2016, was the Declaration of Assistant Attorney General Kathleen M. Kaczor (Dkt. 13) ("Kaczor Declaration"), with Exhibit A ("Plaintiff's Exh. A").[1] On September 30, 2016, Plaintiff filed a motion to stay the action pending resolution in federal district court of supervised release revocation proceedings against Plaintiff in a separate action (Dkt. 17) ("Plaintiff's motion"), attaching Plaintiff Abdul Ali Karim-Rashid's Opposition to Defendants' Motion to Dismiss and Memorandum of Law in Support of Plaintiff's Motion to Stay (Dkt. 17-1) ("Plaintiff's Memorandum"), and the Declaration of Evan B. McGinley, Esq. (Dkt. 17-2) ("McGinley Declaration"), with exhibits A through D ("Plaintiff's Exh(s). __"). Defendants then filed in further support of Defendants' Motion Defendants' Reply Memorandum of Law (Dkt. 19) ("Defendants' Reply"), on October 14, 2016, and Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for a Stay (Dkt. 20) ("Defendants' Response"), on October 18, 2016. On October 25, 2016, Plaintiff filed his Notice of Withdrawal of Motion to Stay (Dkt. 21) ("Plaintiff's Notice of Withdrawal"), thereby withdrawing Plaintiff's motion, but maintaining Plaintiff's opposition to Defendants' Motion remained. Oral argument was deemed unnecessary.

Based on the following, Defendants' Motion should be GRANTED.

---

[1] The refiling of the Kaczor Declaration presumably was to correct the Kaczor Declaration originally filed as an attachment to Defendants' Motion, as Dkt. 12-2, but without Exh. A.

## **FACTS**[2]

Plaintiff Abdul Ali Karim-Rashid ("Plaintiff" or "Karim-Rashid"), also known as Anthony Salgado, Jr. and Vincent Delgado, in connection with Plaintiff's federal criminal conviction by plea on April 8, 1997 ("federal conviction"),[3] was sentenced on July 8, 1997 to 63 months of incarceration, followed by three years supervised release ("federal sentence").  After being released from incarceration for the federal conviction, Plaintiff, on June 16, 2006, Plaintiff was found to have violated the terms of his supervised release for his federal sentence and was sentenced to time served with supervised release re-imposed for an additional three years.  On January 28, 2009, Plaintiff pleaded guilty to one count of robbery in the first degree in violation of New York Penal Law § 160.15 ("state conviction"), for which Plaintiff, on March 24, 2009, was sentenced to ten years of incarceration with five years of post-release supervision ("the state sentence").  The maximum expiration date for Plaintiffs' state sentence was August 5, 2016, with post-release supervision to expire on August 5, 2021.

Plaintiff alleges that in each of the DOCCS correctional facilities in which Plaintiff has been incarcerated on the state conviction, with Plaintiff having been transferred at least ten times in six years, Defendants unlawfully interfered with Plaintiff's exercise of his sincerely held religious beliefs as a devout Muslim.  Plaintiff specifically alleges that while housed in Great Meadow Correctional Facility ("Great Meadow"), in December 2011, DOCCS personnel prevented Plaintiff from obtaining religious items, including a prayer rug, Dhik'r (prayer) beads, prayer oils, and a kufi (head covering).  Complaint ¶ 37.  In 2012, during a transfer from Clinton Correctional Facility ("Clinton") to Great

---

[2] Taken from the pleadings and motion papers filed in this action.
[3] Plaintiff's federal conviction was under the name Vincent Delgado.

4

Meadow, Defendants allegedly lost or damaged Plaintiff's Dhik'r beads and Plaintiff was not permitted to obtain a replacement set for six months. *Id.* ¶¶ 33-34. While housed in Five Points Correctional Facility ("Five Points") in October 2013, DOCCS personnel confiscated Plaintiff's religious medallion and chain, *id.* ¶ 35, and destroyed Plaintiff's Quran and prayer rug by placing them in the in-cell toilet during a purported cell-search. *Id.* ¶ 36. Plaintiff maintains that in February 2015, in the course of being transferred from Great Meadow to Attica Correctional Facility ("Attica"), numerous of Plaintiff's Muslim religious items were lost, misplaced, damaged or confiscated, including Dhik'r beads, a prayer shawl, a kufi, and a prayer rug which DOCCS had previously approved for Plaintiff's use. *Id.* ¶¶ 19-20. In a memorandum dated August 11, 2015 ("August 11, 2015 Memorandum"),[4] DOCCS Imam Z. Gasmalla advised Plaintiff had received security clearance to possess a prayer rug, a prayer shawl, a Kufi, Dhik'r beads, and Islamic literature. *Id.* ¶¶ 24-25. Plaintiff, however, was not permitted to receive a package from his mother containing replacements of these items, nor was Plaintiff ever reimbursed for the lost or damaged religious items. *Id.* ¶¶ 26, 31. Plaintiff also alleges he was denied permission to obtain and use prayer oils, *id.* ¶ 26, and that at some unspecified time Plaintiff went six months without a set of Dhik'r beads after being transferred to Clinton Correctional Facility ("Clinton"). *Id.* ¶ 34. Nor was Plaintiff permitted to avail himself of offers from various Islamic religious organizations to provide the desired religious items because Defendants claimed Plaintiff was prohibited from receiving packages from such organizations and initially refused to deliver to Plaintiff packages containing donated religious items. *Id.* ¶ 38. Plaintiff also alleges

---

[4] Complaint Exh. 1 (Dkt. 1-6).

that although his Muslim religious beliefs require Plaintiff "keep his body clean-shaven," *id.* ¶ 53, while housed at Wende Correctional Facility ("Wende"), DOCCS personnel have restricted Plaintiff's use of shaving devices to Plaintiff's head and face even though permitting Plaintiff to shave other parts of his body poses no substantial security or other risk and despite the fact that Plaintiff was permitted to shave other body parts while housed at other DOCCS's facilities. *Id.* ¶ 54. According to Plaintiff, Defendants' denying Plaintiff the right to possess certain religious articles and to keep his body clean-shaven imposes a substantial burden on Plaintiff's exercise of his religion and furthers no legitimate penological or compelling government interest.

In November 2015, while housed in Attica Correctional Facility ("Attica"), Plaintiff believed the Attica corrections officers were tampering with Plaintiff's meals, prompting Plaintiff to request DOCCS change his religious designation to Jewish which allowed Plaintiff to receive Kosher meals that were hermetically sealed and thus not easily susceptible to the suspected tampering. Despite the change in his DOCCS religious designation to indicate he was Jewish, Plaintiff continued to practice his Muslim faith. With Plaintiff's subsequent transfer to Marcy Correctional Facility ("Marcy"), Plaintiff's meal-tampering fears were abated and Plaintiff requested to change his religious designation back to Muslim, but the request was denied because less than one year had elapsed since Plaintiff designated his religious preference as Jewish. In February 2016, Plaintiff was transferred to Wende where he was housed in the Mental Health Unit ("MHU"), and DOCCS continued to refuse to permit Plaintiff to change his religious preference designation from Jewish to Muslim. Despite DOCCS's persistent refusal to permit Plaintiff to change his religious designation back to Muslim, Plaintiff alleges he

6

"has nevertheless continued to devoutly practice his Muslim faith, by among other things, praying multiple times per day, and studying Muslim religious texts." Complaint ¶ 17.

On August 5, 2016, Plaintiff was released from incarceration on the state conviction and transferred to the United States Marshal's Service pursuant to a detainer ("federal detainer"), issued in connection with the federal supervised release violation for which a hearing (revocation hearing) was scheduled to be held on October 6, 2016, in the Southern District of New York. If Plaintiff were found to have violated the terms of his federal supervised release, Plaintiff could be further detained on the federal conviction for another two years. It was while Plaintiff was awaiting the revocation hearing that Plaintiff moved to stay the instant action pending completion of the revocation hearing, arguing "for purposes of judicial economy, this action should be stayed pending resolution of the revocation hearing on Plaintiff's alleged supervised release violation," Plaintiff's Memorandum at 3, asserting that "because the precise timing of Plaintiff's transfer back to a DOCCS facility is contingent upon the outcome of his supervised release revocation hearing, it makes good sense to stay these proceedings to avoid litigating against an unsettled factual background." *Id.* at 6. Plaintiff's August 5, 2016 release from incarceration by DOCCS on the state conviction was also subject to a detainer ("state detainer"), requiring that Plaintiff, upon release from the federal detainer, "be returned to the custody of Wende Correctional Facility . . . for purposes of RTF."[5] Plaintiff's Exh. A. According to Plaintiff, Plaintiff's Memorandum at 7, because the maximum expiration date for Plaintiff's post release supervision on his

---

[5] "RTF" is an acronym for "Residential Treatment Facility."

7

state sentence is August 5, 2021, more than two years after the federal revocation hearing, Plaintiff likely would be returned to DOCCS custody at Wende either immediately after the federal revocation hearing, if Plaintiff were found not to have violated the terms of his federal supervised release, or two years after the federal revocation hearing if Plain were found in violation of his federal supervised release. Upon completion of the revocation hearing, Plaintiff withdrew the motion, yet has not advised the court of the revocation hearing's result.

## DISCUSSION

Defendant moves pursuant to Fed.R.Civ.P. 12(b)(1) ("Rule 12(b)(1)"), to dismiss the instant action for lack of jurisdiction, arguing Plaintiff's release from incarceration has rendered moot Plaintiff's requests for declaratory and injunctive relief, thereby depriving the court of any basis for subject matter jurisdiction for want of an actual "case or controversy." Defendants' Memorandum at 2-6. In opposition, Plaintiff argues that his claims for injunctive and declaratory relief are not moot because Plaintiff's August 5, 2016 release from DOCCS incarceration to the U.S. Marshals pursuant to the federal detainer issued in connection with the federal revocation hearing was subject to the state detainer requiring Plaintiff's return to DOCCS custody at Wende either immediately after the federal revocation hearing, if Plaintiff were found not to have violated the terms of his federal supervised release, or two years after the federal revocation hearing if Plain were found in violation of his federal supervised release, but in either event, within the five years of supervised release called for in connection with Plaintiff's state sentence. Plaintiff's Memorandum at 7-9. In further support of

dismissal, Defendants maintain that Plaintiff, at best, has alleged an anticipatory transfer to an RTF which does not satisfy the "case or controversy" requirement for federal subject matter jurisdiction. Defendants' Reply at 2-9.

"'A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists.'" *Fountain v. Karim*, 838 F.3d 129, 134 (2d Cir. 2016) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). "'In resolving a motion to dismiss under Rule 12(b)(1), the district court must take all uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in favor of the party asserting jurisdiction.'" *Id.* (quoting *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014)). Any disputed jurisdictional issues of fact may be resolved by the court by reference to evidence outside the pleadings and holding an evidentiary hearing if necessary.[6] *Id.* (citing *Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000)).

"The federal courts are courts of limited jurisdiction, their powers circumscribed at their most basic levels by the terms of Article III of the Constitution, which state that they may hear only 'Cases' or 'Controversies.'" *Russman v. Board of Education of the Enlarged City School District of the City of Watervliet*, 260 F.3d 114, 118 (2d Cir. 2001) (quoting U.S. Const. art. III, § 2 cl. 1). For the "case or controversy" requirement to be met, "at all times, the dispute before the court must be real and live, not feigned, academic, or conjectural." *Id.* Specifically, "[t]he requisite dispute must persist

---

[6] In contrast, where a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(1) for lack of jurisdiction is based solely on the pleadings, the plaintiff has no evidentiary burden to establish jurisdiction with the district court tasked with determining whether the pleading alleges sufficient facts establishing the plaintiff has standing to sue. *John v. Whole Foods Market Group, Inc.*, 858 F.3d 732, 736 (2d Cir. 2016).

throughout the litigation . . . from first filing in the district court through its many ascents and descents of the appellate ladder – and if the dispute should dissolve at any time due to a change in circumstances, the case becomes moot." *Id.* (citing cases). Whenever a case becomes moot, the court loses jurisdiction over it requiring the case be dismissed. *Id.* As such, "under the mootness doctrine, 'if an event occurs . . . that makes it impossible for the court to grant any effectual relief whatever to a prevailing party,' [the court] must dismiss the case, rather than issue an advisory opinion.'" *ABC, Inc. v. Stewart*, 360 F.3d 90, 97 (2d Cir. 2004) (quoting *Church of Scientology v. United States*, 506 U.S. 9, 12 (1992)).

There exists, however, an exception to the mootness doctrine "where the case is 'capable of repetition, yet evading review.'" *Russman*, 260 F.3d at 119 (quoting *S. Pac. Terminal Co. v. ICC*, 219 U.S. 498, 515 (1911)). "The capable-of-repetition principle applies only 'where the following two circumstances are simultaneously present: (1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again.'" *Id.* (quoting *Spencer v. Kemna*, 523 U.S. 1, 17 (1998)). "A recurrent dispute will 'evade review' if it could not be entirely litigated before again becoming moot, including prosecution of appeals as far as the Supreme Court." *Id.* (citing *Honig v. Does*, 484 U.S. 305, 322-23 (1988) (noting the likely mooting "by the time review can be had in this Court" of any future lawsuit brought by plaintiff). "Given these strictures, it has been said that the exception 'applies only in exceptional situations.'" *Id.* (quoting *Spencer*, 523 U.S. at 17). As the party seeking application of the exception, Plaintiff "bears the burden of demonstrating that this controversy is

10

indeed 'capable of repetition, yet evading review.'" *Video Tutorial Services, Inc. v. MCI Telecommunications Corp.*, 79 F.3d 3, 6 (2d Cir. 1996) (citing cases). In the instant case, Plaintiff does not deny that his release to custody of the U.S. Marshals has rendered moot his claims for declaratory judgment and injunctive relief, but Plaintiff maintains the situation is sufficiently exceptional as to fall within the mootness doctrine exception. Plaintiff's Memorandum at 6-9.

In particular, Plaintiff maintains that because the state detainer requires that upon being released from federal custody, Plaintiff must be returned to DOCCS's custody at Wende, where many of the claimed RLUIPA violations allegedly occurred, it is very likely that Defendants will again interfere with Plaintiff's sincerely held religious Muslim beliefs. Plaintiff's Memorandum at 7-9. As Plaintiff points out, because the maximum amount of time for which Plaintiff may be detained in federal custody in connection with the federal revocation hearing is two years, should Plaintiff not prevail at the October 6, 2016 revocation hearing, Plaintiff would be released from federal custody in 2018, well before Plaintiff's August 5, 2021 post release supervision maximum expiration date such that Plaintiff's return to DOCCS's physical custody is imminent. *Id.* Even upon being transferred to an RTF, as contemplated by the state detainer, an RTF is considered a correctional facility whose residents, despite being on post-release supervision, are subject to the same DOCCS policies and disciplinary rules as inmates in standard correctional facilities. *Id.* Plaintiff maintains that under these circumstances, it cannot be gainsaid "that 'there is no reasonable expectation . . . that the alleged violation will recur' or that 'events have completely and irrevocably

eradicated the effects of the alleged violation.'" *Id.* at 8 (quoting *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979)).

As stated, the capable-of-repetition principle applies only 'where the following two circumstances are simultaneously present: (1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again.'" *Russman*, 260 F.3d at 119 (quoting *Spencer v. Kemna*, 523 U.S. 1, 17 (1998)). "A recurrent dispute will 'evade review' if it could not be entirely litigated before again becoming moot, including prosecution of appeals as far as the Supreme Court." *Id.* (citing *Honig v. Does*, 484 U.S. 305, 322-23 (1988) (noting the likely mooting "by the time review can be had in this Court" of any future lawsuit brought by plaintiff).

With regard to the first prong of the mootness doctrine exception, it is not clear whether the complained of injury is of such limited duration that it would become moot before Plaintiff could fully litigate it, although it does seem likely were Plaintiff to be returned to DOCCS's custody for only the six months he is scheduled to be in RTF. Nevertheless, Plaintiff has not met his burden of establishing the second prong that Plaintiff would be subjected to the same alleged RLUIPA violations by the same Defendants upon being placed in an RTF for six months.

In particular, as to the second prong requiring a reasonable expectation that Plaintiff will again be subject to the same RLUIPA violations alleged here, the parties do not dispute that until Plaintiff's post release supervision maximum expiration date of August 5, 2021, Plaintiff remains under the supervision of DOCCS, and may be taken back into physical custody should Plaintiff violate any conditions of his post-release

supervision or parole. In other words, because a convicted person who is released on parole is still under the supervision of DOCCS, the convict remains in custody, albeit not in physical custody, of DOCCS. Significantly, the state detainer requires that Plaintiff, upon completion of any sentence of incarceration relevant to the federal detainer, be returned to Wende and placed in an RTF under the supervision of DOCCS. Inmates who are transferred to RTFs are considered to be in the custody of DOCCS. *See* N.Y. Corr. Law § 72[1] (providing that all "persons committed, transferred, certified to or placed in the care or custody of [DOCCS] shall be confined in institutions maintained by the department . . ."); § 73[1] (considering inmates transferred to an RTF to be in DOCCS's custody and supervision even while outside the RTF at an activity related to his rehabilitation or established program); § 73[10] ("Persons who reside in such a [residential treatment] facility shall be subject to conditions of community supervision imposed by the board."). Nevertheless, although the state detainer does instruct that Plaintiff, upon being released on the federal sentence, is to be transferred to Wende, where some of the claimed RLUIPA violations are alleged to have occurred, the transfer to Wende is to be in preparation for Plaintiff's transfer to an RTF which by definition, is not a maximum security general confinement correctional facility like Wende. Plaintiff points to no evidence establishing that upon reporting to Wende, he would be detained at Wende for any length of time prior to being placed in an RTF, or that upon his transfer to an RTF, Plaintiff again would be subjected to violations of the RLUIPA as he allegedly experienced prior to being released from DOCCS on August 5, 2016. Plaintiff

13

thus has failed to satisfy his burden of proof to establish the mootness doctrine exception applies.[7]

Furthermore, because only equitable and declaratory relief, but not money damages, are available under the RLUIPA, *Randolph v. Griffin*, 2014 WL 3548967, at * 5 (W.D.N.Y. July 17, 2014) (citing cases), the mootness bar to Plaintiff's relief requests cannot be avoided.

## **CONCLUSION**

Based on the foregoing, Defendants' Motion (Dkt. 12), should be GRANTED; the Clerk of the Court should be directed to close the file.

Respectfully submitted,

/s/ *Leslie G. Foschio*
_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:   August 7, 2017
         Buffalo, New York

---

[7] The court remains uncertain as to why Plaintiff moved to stay the instant action pending resolution of the revocation hearing regarding Plaintiff's federal sentence, noting that on October 25, 2016, Plaintiff, who had moved to stay the instant action pending completion of a federal supervised release revocation hearing so as to "to avoid litigation against an unsettled factual background," Plaintiff's Memorandum at 6, withdrew the motion to stay asserting the federal supervised release revocation hearing had been completed, yet Plaintiff never informs the court of the hearing's outcome such that the court is unable to determine why Plaintiff believes the factual background is now "settled," the reason Plaintiff gave for seeking the stay. Plaintiff's Memorandum at 6.

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(d) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited*, 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Plaintiff and the Defendants.

SO ORDERED.

/s/ *Leslie G. Foschio*
_____

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:   August 7, 2017
         Buffalo, New York